# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| JOHN GREGORY CURRY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 17 C 3659 |
| | ) | |
| MARK JOSEPH LOPEZ, Associate Judge, | ) | Judge Rebecca R. Pallmeyer |
| Circuit Court of Cook County, Illinois, | ) | |
| in his individual capacity a/k/a Honorable | ) | |
| Mark J. Lopez; JANE FELDMAN FIELDS, | ) | |
| a/k/a Law Offices of Jane F. Fields d/b/a | ) | |
| Law Offices of Jane F. Fields; CONSTANCE | ) | |
| VERNETTE CURRY; and, GREGORY | ) | |
| EMMETT AHERN, JR., Associate Judge, | ) | |
| Circuit Court of Cook County, Illinois, | ) | |
| in his individual capacity a/k/a Honorable | ) | |
| Gregory Emmett Ahern, Jr., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff John G. Curry has been embroiled in litigation with his ex-wife, Defendant Constance V. Curry, concerning custody and support for the couple's two children. The litigation is pending in the Circuit Court of Cook County. Curry has now turned to this court, alleging that his former wife, her attorney, and two state court judges have violated Plaintiff's rights under state and federal statutes and the United States Constitution. Defendants Constance Curry and her attorney, Jane F. Fields, have moved to dismiss the case, as have Defendants Mark J. Lopez and Gregory E. Ahern, both Associate Judges of the Circuit Court of Cook County. Plaintiff moves for certain miscellaneous relief, as well, including an order requiring Defendants to reimburse him for the costs of service of process in this litigation. For numerous reasons, this case must be dismissed. The motions to dismiss [17, 22] are granted, and Plaintiff's motion [6] is granted with respect to cost of service and otherwise denied.

## BACKGROUND

Curry's allegations are presumed true for purposes of this motion. *Berger v. Nat'l Coll. Athletic Ass'n*, 843 F.3d 285, 298 (7th Cir. 2016). Plaintiff alleges that until 2015, he was employed with the Chicago Fire Department. (Compl. ¶ 4.) He and Defendant Constance V. Curry, the parents of two children, have been divorced since 2007. (*Id.* ¶¶ 10-17.) In 2006 and 2007, the Currys entered into a series of custody agreements providing that Ms. Curry had sole custody of the children, Mr. Curry's income from the Chicago Fire Department would be garnished by $1,070 per month to provide financial support, and Mr. Curry would inform Ms. Curry within thirty days of any changes to his income. (*Id.* ¶¶ 15-17.)

For the next several years, the Currys resolved disagreements concerning their children and finances informally. The accord broke down, however, in late 2014, when text messages from Plaintiff's son generated concerns about Ms. Curry's behavior, and Plaintiff petitioned the Circuit Court of Cook County to award him custody of both children. (*Id.* ¶¶ 18, 19, 21.) The case was assigned to Defendant Lopez. (*Id.* ¶ 22.)

Judge Lopez ordered the Currys to participate in mediation. (*Id.* ¶ 25) Shortly thereafter, Ms. Curry, through her attorney, Defendant Jane Fields, requested that Mr. Curry make certain financial disclosures. (*Id.* ¶ 30.) On June 16, 2015, Judge Lopez found Mr. Curry to be in indirect civil contempt, citing his "contumacious willful failure" to inform Ms. Curry of increases to his income. (*Id.* ¶ 35.) The following month, the judge modified the child support obligation, increasing Mr. Curry's monthly payment to $1,825. (*Id.* ¶ 39.) Judge Lopez also ordered Mr. Curry to pay an additional $365 per month in "retroactive child support and interest." (*Id.*)

On August 16, 2015, Mr. Curry retired from the Chicago Fire Department. (*Id.* ¶ 40.) He notified the Circuit Court and his ex-wife that he would not have any income for up to two months following his retirement, at which point he would begin receiving pension benefits. (*Id.* ¶ 41.) Mr. Curry moved for a reduction in his support obligation in light of his reduced income, but

Judge Lopez denied the motion on the ground that Plaintiff had left his job voluntarily. (*Id.* ¶¶ 43, 47.) The court also ordered Mr. Curry to pay $4,200 in attorney fees at a rate of $500 per month. (*Id.* ¶ 103.) On Ms. Curry's motion, the court also ordered Plaintiff to execute a Qualified Illinois Domestic Relations Order (QILDRO) and consent to a monthly garnishment of $2,190 from his pension income. (*Id.* ¶ 44.) Mr. Curry executed the QILDRO on a court form that included information concerning state and federal limits on withholding. (*Id.* ¶ 45.)

Though he executed the QILDRO, Curry challenged the validity of this arrangement by filing a new action in the Circuit Court of Cook County. (*Id.* ¶¶ 45, 46.) Judge Thomas R. Allen, who is not a party here, dismissed this new action, pointing out that the proper "procedural avenue was to appeal Judge Lopez's order." (*Id.* ¶ 46.) Then on December 17, 2015, Judge Lopez again found Mr. Curry in indirect civil contempt, this time due to Mr. Curry's failure to submit payments for three months following his retirement. (*Id.* ¶ 47.) Mr. Curry sought a modification of that order, arguing that the garnishment amount exceeded regulatory guidelines and his personal finances, but Judge Lopez rejected the argument and denied a subsequent motion for reconsideration. (*Id.* ¶¶ 51, 52.) The Illinois Appellate Court affirmed the contempt child support order and the contempt finding. See *Curry v. Curry*, No. 1-16-0965, 2016 WL 7208982, at *4 (Ill. App. Ct. Dec. 9, 2016). The Appellate Court concluded, however, that it lacked jurisdiction to review the denial of Mr. Curry's petition for modification of the child support obligation because it was not a final order. *Id.* at *2. Plaintiff sought leave to appeal that ruling to the Illinois Supreme Court (*id.* ¶ 85); his petition was denied on May 24, 2017. (Pl.'s Resp. in Opp. to Defs.' 12(b)(6) Mot. to Dismiss [30], at 7.)

Mr. Curry eventually withdrew his custody petition. (Compl. ¶¶ 58-60.) For reasons not revealed in the complaint, at a hearing on October 26, 2016, Judge Lopez ordered Mr. Curry to be taken into custody. He withdrew the order only after Plaintiff offered to pay outstanding financial obligations with funds he expected to recover from a settlement in an unrelated case. (*Id.* ¶ 62.) Judge Lopez agreed to this arrangement on the condition that the settlement

3

proceeds be tendered directly to Defendant Fields and held in her Interest on Lawyer Trust Account (IOLTA) "for further determination of allocation by this Court." (*Id.*) Mr. Curry ultimately tendered $69,000 from these funds at a hearing on April 28, 2017. (*Id.* ¶¶ 91-92.)

In the meantime, Mr. Curry successfully sought substitution of Judge Lopez, and the custody dispute was reassigned to Defendant Ahern. (*Id.* ¶¶ 66, 70-72.) On February 6, 2017, Mr. Curry filed a "Petition for Punishment, For Prosecution, and For Other Just and Proper Relief," but Judge Ahern "refus[ed] to recognize" that Petition and ordered Plaintiff to obtain leave of court before filing any additional pleadings. (*Id.* ¶¶ 79, 150-57.) On April 28, 2017, Judge Ahern ordered Mr. Curry to "maintain a job diary of at least 5 contacts per week." (*Id.* ¶ 161.) Two months later, Judge Ahern ordered that the funds being held in Ms. Fields' IOLTA account be used to pay Ms. Fields' attorney fees and some or all of Mr. Curry's delinquent support obligations, and that Plaintiff's monthly support obligation increase to $2,489.52. (Pl.'s Mot. for Miscellaneous Relief [6], at 3-5.)

Mr. Curry filed this case on May 16, 2017, alleging that Defendants' conduct violates federal and state laws. He seeks $500,000 in compensatory damages as well as punitive damages against the individual Defendants. (Compl. ¶ 175.) He also requests that the funds held in Ms. Fields' IOLTA account "be released/returned immediately," that Defendants be "punished as in cases of contempt of court," and that this court order law enforcement officials to initiate "criminal prosecution of the Defendants . . . under 18 U.S.C. § 242." (*Id.*) In addition, in a Motion for Miscellaneous Relief [6], Mr. Curry alleges that Defendants have continued to violate his federal and state law rights by entering and enforcing child support and income withholding orders and by refusing to waive service of summons in this federal case. He seeks removal of the state custody case to this court and an order staying all of his payment obligations.

**DISCUSSION**

All Defendants have moved to dismiss this case on various grounds. Defendants Lopez and Ahern, both state court judges, contend they are immune from civil liability. Ms. Curry and her attorney, Defendant Fields, contend that Plaintiff has not stated a claim that arises under the court's jurisdiction, and that any valid challenge to the state court proceedings would be subject to *Younger* abstention. Regardless whether *Younger* abstention is appropriate here, this court concludes it lacks jurisdiction to proceed. Apart from his request for reimbursement of service costs under FED. R. CIV. P. 4(d)(2), Plaintiff's motion for miscellaneous relief is denied.

**I.    Abstention**

Because abstention would foreclose consideration of the parties' remaining arguments, the court begins there. All four Defendants argue that this court should abstain from deciding Plaintiff's claims under the doctrine of *Younger v. Harris*, 401 U.S. 37 (1971). *Younger* abstention is appropriate in situations "where federal jurisdiction would intrude into ongoing state criminal proceedings, or into certain civil enforcement proceedings (judicial or administrative) akin to criminal prosecutions, or into civil proceedings 'that implicate a State's interest in enforcing the orders and judgments of its courts.'" *Mulholland v. Marion Cty. Election Bd.*, 746 F.3d 811, 815 (7th Cir. 2014) (quoting *Sprint Commc'ns, Inc. v. Jacobs*, 134 S. Ct. 584, 588 (2013)).

The *Younger* doctrine appears to apply squarely in this case, where Plaintiff Curry asks this court to interfere with the state court's efforts to enforce its orders. Curry notes, however, that the Seventh Circuit has recognized that "extraordinary circumstances" may justify such intervention. *Mulholland,* 746 F.3d at 818. In *Mulholland*, for example, the district court had abstained from deciding a constitutional challenge to a county election board's enforcement of an Indiana election regulation. In reversing that decision, the Seventh Circuit pointed out that the Indiana regulation had been declared unconstitutional years earlier. For the county to

5

nevertheless attempt to enforce it against the plaintiff "shaves very close to harassment or bad faith prosecution," the court explained. *Id* at 818.

Mr. Curry argues that his case is similarly extraordinary; he urges that "not much could be more extraordinary than two Illinois judges knowingly and intentionally violating a prohibitive Act of Congress." (Pl.'s Resp. in Opp'n to Defs.' 12(b)(6) Mot. to Dismiss 3.) As the court understands this argument, Mr. Curry believes that the state court has ordered that his income be garnished in excess of the limitations imposed by 15 U.S.C. § 1673 and by state law. Assuming Mr. Curry is correct about this, it does not present the situation involved in *Mulholland*, where the state was attempting to enforce a statute already declared unconstitutional. More importantly, Mr. Curry has not shown that he needs a federal injunction to enforce his rights; he is free to challenge the state courts' orders through the state appeal process. "Federal courts must presume that state courts are capable of establishing and administering judicial process consistent with the requirements of the federal constitution, and 'that state procedures will afford an adequate remedy, in the absence of unambiguous authority to the contrary." *Barichello v. McDonald*, 98 F.3d 948, 954-55 (7th Cir. 1996) (quoting *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 15 (1987)).

Plaintiff insists the appellate process is inadequate because "both the Appellate and Illinois Supreme Court" declined to review "the issue of these Defendant Judges violating a prohibitive Act of Congress and Illinois laws." (Pl.'s Resp. in Opp'n to Defs.' 12(b)(6) Mot. to Dismiss 3.) But this is not quite accurate. The Illinois Appellate Court *did* review the validity of Judge Lopez's original order that increased Mr. Curry's child-support obligations, as well as his subsequent contempt and attorney fee orders. *See Curry*, 2016 WL 7208982, at *2-4. It found that Judge Lopez did not abuse his discretion. *Id.* The court only found that it lacked jurisdiction to review the denial of Mr. Curry's motions for modification of the child support order because those orders were not final. *Id.* at *2. Mr. Curry's allegations do not satisfy this court that he has no opportunity for review of his federal claims in the Illinois state courts. The court

6

need not decide the issue, however, because the complaint must be dismissed for other reasons, described below.

## II. *Rooker-Feldman* doctrine

The parties have not directly addressed the *Rooker-Feldman* doctrine, but this court has an "independent duty to ensure subject matter jurisdiction." *Dexia Credit Local v. Rogan*, 602 F.3d 879, 883 (7th Cir. 2010). That duty is relevant here, as the doctrine limits this court's authority to review certain state-court actions. *See Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923); *D.C. Court of Appeals v. Feldman*, 460 U.S. 462 (1983). The doctrine applies where "state court losers" are "complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005).

The case law establishes that "the Supreme Court of the United States is the only federal court that may review judgments entered by state courts in civil litigation." *Harold v. Steel*, 773 F.3d 884, 885 (7th Cir. 2014). If the state court's decision is "the source of the injury of which plaintiffs complain in federal court," *Harold*, 773 F.3d at 885, and if the federal plaintiffs have had "a reasonable opportunity to raise the issue in state court proceedings," *Long v. Shorebank Dev. Corp.*, 182 F.3d 548, 558 (7th Cir. 1999), then the federal court has no power to act. "At its core, the doctrine is a recognition of the principle that the inferior federal courts generally do not have the power to exercise appellate review over state court decisions." *Schmitt v. Schmitt*, 324 F.3d 484, 485–86 (7th Cir. 2003) (quoting *Kamilewicz v. Bank of Boston Corp.*, 92 F.3d 506, 509 (7th Cir.1996)).

In *Schmitt*, the Seventh Circuit concluded that a complaint alleging facts quite similar to those alleged here went to "the heart of the *Rooker-Feldman* doctrine." *Schmitt*, 324 F.3d at 485. There, the husband in a state-court divorce proceeding filed an interlocutory appeal of an order that he "pay maintenance, landscaping, travel, and attorneys' fees" to his ex-wife, claiming that the order deprived him of due process because of alleged defects in the service of process.

7

*Id.* After the Illinois Appellate Court rejected this claim, Schmitt sought relief for the alleged due process violation in a § 1983 action in federal district court. *Id.* The Seventh Circuit affirmed the district court's dismissal of the action on *Rooker-Feldman* grounds. "Circumventing the prescribed mode of appellate review is virtually the only way to describe what Mr. Schmitt is doing," the court explained. *Id.* at 487

Much like the plaintiff in *Schmitt*, Mr. Curry is attempting to "circumvent[] the prescribed mode of appellate review" in this case. *Id.* Orders issued by state judges are "the source of the injury" of which Mr. Curry now complains. *Harold*, 773 F.3d at 885. Thus, he alleges that Judge Lopez violated his statutory and constitutional rights "*by ordering* retroactive child support" (Compl. ¶ 96) (emphasis added); "*by ordering* that Plaintiff pay the $4,200 in attorney's fees . . . at the rate of $500.00 per month" (*Id.* ¶ 103) (emphasis added); "*by ordering* . . . that $2,190.00 be garnished monthly" (*Id.* ¶ 115) (emphasis added); "*by denying* Plaintiff's motion to reconsider" (*Id.* ¶ 120) (emphasis added); "*by ordering/awarding* $7,500.00 as a sanction against Plaintiff for noncompliance" (*Id.* ¶ 124) (emphasis added); "*by ordering* . . . that $2,492.52 be garnished monthly" (*Id.* ¶ 126) (emphasis added); and "*by ordering* that any and all settlement funds from Plaintiff's Chancery case . . . be directly tendered" (*Id.* ¶ 136) (emphasis added) and "immediately deposited into Defendant Jane F. Fields' IOLTA account." (*Id.* ¶ 143.) Similarly, Mr. Curry alleges that Judge Ahern violated his constitutional rights "*by ordering* Plaintiff to maintain a job diary." (*Id.* ¶ 161) (emphasis added). And, as in *Harold*, where the plaintiff attempted to challenge a state garnishment order by way of a federal fair debt case, none of Mr. Curry's claimed injuries occurred "until the state judge ruled against" him. 773 F.3d at 886. The state-court orders themselves are the source of Mr. Curry's injuries.

Mr. Curry had a reasonable opportunity to object to these orders not only before Judges Lopez and Ahern, but also before the Illinois Appellate Court. When he did, he lost. Unlike cases where state courts provided no reasonable opportunity to raise a particular claim, the state court here did not raise "barriers that the litigants are incapable of overcoming." *Long*, 182

F.3d at 558 (citing cases). Mr. Curry himself acknowledges that he was permitted to raise his federal claims in a January 15, 2016 motion for reconsideration of his request for modification of the child support order. (Compl. ¶ 51.) Judge Lopez's denial of this motion did not prevent Mr. Curry from presenting his arguments to the court. Nor did Judge Ahern's order that Mr. Curry obtain leave of the court before filing additional motions present a barrier that Mr. Curry is "incapable of overcoming," *Long*, 182 F.3d at 558. Curry also makes vague allegations that Judge Ahern "refus[ed] to recognize" Mr. Curry's February 6 "Petition for Punishment"; those allegations do not state a claim that is "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

True, some of the orders about which Mr. Curry complains were not considered by the Illinois Appellate Court—either because it lacked jurisdiction or because Mr. Curry declined to appeal them. To the extent that Mr. Curry believes the *Rooker-Feldman* doctrine does not preclude federal court review of a state court's interlocutory orders, this court believes he is mistaken. As the Seventh Circuit has observed, "[n]othing in the Supreme Court's decisions suggests that state-court decisions too provisional to deserve review within the state's own system can be reviewed by federal district and appellate courts. . . . A truly interlocutory decision should not be subject to review in *any* court; review is deferred until the decision is final." *Harold*, 773 F.3d at 886. *See also Carpenter v. PNC Bank, Nat'l Ass'n*, 633 F. App'x 346, 347-48 (7th Cir.), *cert. denied*, 136 S. Ct. 2394 (2016), *reh'g denied*, 136 S. Ct. 2549 (2016) (finding *Rooker-Feldman* applicable to judgment that "may not yet be appealable under state law").

The fact that the Illinois Appellate Court declined to review Judge Lopez's denial of Mr. Curry's motion to reconsider, therefore, does not place that decision outside the purview of *Rooker-Feldman*. The jurisdictional statute on which the *Rooker-Feldman* doctrine is premised refers to "judgments or decrees rendered by the highest court of a State *in which a decision could be had*." 28 U.S.C. § 1257(a) (emphasis added). If the Illinois Appellate Court could not

9

review the trial court's decisions, then the trial court is the highest court "in which a decision could be had," meaning that its decisions are not subject to this court's review.

### III. Judicial Immunity

Fifteen of the eighteen counts in Mr. Curry's complaint are directed at Judge Lopez and/or Judge Ahern. Mr. Curry alleges, for example, that Judge Lopez's July 22, 2015 order that he pay retroactive child support violates Mr. Curry's rights under the Eighth and Fourteenth Amendments to the United States Constitution, as well as a provision of the Illinois Marriage and Dissolution of Marriage Act (750 ILCS 5/510) relating to the modification of support payments. (Compl. ¶¶ 95-101.) Mr. Curry also alleges that various orders subsequently entered by Judge Lopez and Judge Ahern subjected him to cruel and unusual punishment in violation of the Eighth Amendment (*Id.* ¶¶ 103-04); infringed his rights under 15 U.S.C. § 1673 and 750 ILCS 28/35 by garnishing an excessive share of his disposable earnings (*Id.* ¶¶ 115-18, 126-28); extorted money from him in violation of 18 U.S.C. § 1951 (*Id.* ¶¶ 136-44); violated his Fourteenth Amendment rights to due process and equal protection by "hindering Plaintiff's ability/right to defend himself from wrongful acts" and by "treating Plaintiff differently than a represented party" (*Id.* ¶¶ 152-53); and subjected him to involuntary servitude in that the court required him to "maintain a job diary." (*Id.* ¶¶ 161-66.)

As explained above, the *Rooker-Feldman* doctrine bars these claims. Apart from that doctrine, claims for damages arising from Judges Lopez or Ahern's decisions are barred by the doctrine of absolute judicial immunity. That doctrine "shields judicial and quasi-judicial actors from liability for civil damages arising out of the performance of their judicial functions." *Killinger v. Johnson*, 389 F.3d 765, 770 (7th Cir. 2004). A judge is immune from liability for judicial action "unless the judge acted in the absence of all jurisdiction." *Polzin v. Gage*, 636 F.3d 834, 838 (7th Cir. 2011). Neither bad faith nor malice on the part of a judge is sufficient to overcome judicial immunity. *Myrick v. Greenwood*, 856 F.3d 487, 488-89 (7th Cir. 2017) (citing *Mireles v. Waco*, 502 U.S. 9, 11 (1991)). And of the three factors identified by the Seventh

Circuit as relevant to whether an act is shielded by immunity, *see Dawson v. Newman*, 419 F.3d 656, 661 (7th Cir. 2005), all favor that determination here: the judges' acts involved the exercise of discretion, were acts normally performed by judges, and corresponded to the parties' expectations of the judges' conduct. *Id.*

Mr. Curry nevertheless contends that "there is no Eleventh Amendment immunity in actions like this particular action." (Pl.'s Resp. in Opp'n to Defs.' Rule 12(b)(6) Mot. to Dismiss 7.) But the Eleventh Amendment has little to do with the doctrine of absolute judicial immunity, which is rooted in the common law and the decisions of the U.S. Supreme Court. *See, e.g.*, *Forrester v. White*, 484 U.S. 219, 225 (1988) (tracing the history of absolute judicial immunity).

Finally, Plaintiff argues that judicial immunity does not apply here because "judges do not normally perform crimes and/or other acts of willful and wanton misconduct," and because "[n]o one 'expects' a judge to criminally abuse them and deprive them of civil rights." (Pl.'s Resp. in Opp'n to Defs. Rule 12(b)(6) Mot. to Dismiss 11.) He attempts to distinguish the Seventh Circuit's recent holding in *Myrick v. Greenwood*, 856 F.3d 487 (7th Cir. 2017)—which affirmed the dismissal of a suit against six state judges who presided over the plaintiff's "lengthy divorce and child custody proceedings"—on the grounds that "[t]he *Myrick* judges were accused of no crimes or non-judicial acts." (Pl.'s Resp. in Opp'n to Defs. Rule 12(b)(6) Mot. to Dismiss 11.) The effort to distinguish *Myrick* is unsuccessful. Judges Lopez and Ahern were clearly engaged in judicial functions when they made decisions about the scope of Mr. Curry's child support obligations, the proper remedies for his failures to comply with court orders, and the merits of his motions for reconsideration and for substitution. Such decisions involve the exercise of discretion and judgment, and they are precisely what parties to an ongoing legal dispute can reasonably expect from a judge presiding over their case. Even if Judges Lopez and Ahern *did* err in their interpretations of state and federal law—a question this court does not decide—this alone would not make their actions "crimes," *cf. Lynk v. LaPorte Superior Court No. 2*, 789 F.2d 554, 563-64 (7th Cir. 1986) ("[A]n adverse judgment, even one that is erroneous as

a matter of state or even federal law, is not a denial of due process."), let alone justify a finding that judicial immunity does not apply. As the *Myrick* court emphasized, "judicial immunity is not overcome by allegations of bad faith or malice." 856 F.3d at 488-89 (citing *Mireles*, 502 U.S. at 11).

IV.     **Subject Matter Jurisdiction**

The remaining counts in Mr. Curry's complaint argue that Ms. Fields and Ms. Curry infringed Mr. Curry's rights under the Eighth and Fourteenth Amendments, as well as 15 U.S.C. § 1673 and 750 ILCS 28/35, by serving Plaintiff's pension fund with a notice directing the withholding of funds for payment of his support obligations. (*Id.* ¶¶ 106-13, 130-34). The final count in the complaint alleges that all Defendants engaged in a conspiracy to violate Mr. Curry's constitutional rights. (*Id.* ¶¶ 168-72.)

Defendants Fields and Curry argue that "Mr. Curry is asking this Article III court to sit as a divorce court." (Mem. in Supp. of 12(b)(1) Mot. to Dismiss [25], at 4). They move to dismiss on the grounds that "the domestic relations exception to federal jurisdiction bars federal courts from adjudicating claims related to divorce and custody." (*Id.* at 4-5.)

The court agrees with Defendants Fields and Curry that it lacks subject matter jurisdiction in this case, though not because Plaintiff is seeking a declaration of custody or visitation rights, as in *Allen v. Allen*, 48 F.3d 259, 260 (7th Cir. 1995), the case Defendants cite. Mr. Curry withdrew his petition to obtain custody of his children before filing suit in federal court. (Compl. ¶ 60). Instead, he alleges that Defendants Fields and Curry violated his rights under 15 U.S.C. § 1673 by "creating and serving on Plaintiff's payor of pension benefits . . . a Notice of Income Withholding for Support," (Compl. ¶¶ 106, 130), and by "conspir[ing]" with Defendants Lopez and Ahern "to violate one or more of Plaintiff's civil rights" under the Eighth, Thirteenth, and Fourteenth Amendments. (Compl. ¶ 168.) Whatever the merits of these claims, they need not be interpreted as requests that the court "sit as a divorce court." (Mem. in Supp. of 12(b)(1) Mot. to Dismiss 4.)

The court nevertheless concludes it lacks jurisdiction, again for reasons not directly addressed by counsel. The parties are not diverse in citizenship. Instead, Mr. Curry invokes federal question jurisdiction "because 15 U.S.C. § 1673 was violated" on numerous occasions. (Pl.'s Resp. in Opp'n to Rule 12(b)(1) Mot. to Dismiss [31], at 3.) But that statute delegates enforcement authority to "[t]he Secretary of Labor, acting through the Wage and Hour Division of the Department of Labor," 15 U.S.C. § 1676, without expressly creating a private right of action. Several courts have concluded that this language precludes an implied private right of action under 15 U.S.C. § 1673. *See, e.g.*, *McCabe v. City of Eureka*, 664 F.2d 680, 682 (8th Cir. 1981) ("The absence of any reference to a private right of action in Subchapter II when viewed in light of Congress' detailed provision of such a right under Part B of Subchapter I . . . is in our opinion an implicit manifestation of an intent to deny such a remedy."); *Jordan v. Chase Manhattan Bank*, 91 F. Supp. 3d 491, 501-02 (S.D.N.Y. 2015) (plaintiff "provided no basis for the Court to infer a private right of action"); *Pressman v. Neubart*, 2002 WL 31780183, at *3 (S.D.N.Y. Dec. 12, 2002) (subject matter jurisdiction was absent because "15 U.S.C. § 1673, upon which Plaintiff relies to support his claim that the court has subject matter jurisdiction under 28 U.S.C. § 1331, does not contemplate a private right of action by an individual debtor"); *Burris v. Mahaney*, 716 F. Supp. 1051, 1058 (M.D. Tenn. 1989) ("If there is no implied private cause of action for a violation of 15 U.S.C. § 1673, it is also only logical that there can be no section 1983 action for violation of 15 U.S.C. § 1673."). This court agrees.

The Plaintiff next argues that subject matter jurisdiction exists for his claims against Defendants Fields and Curry pursuant to civil rights laws. Specifically, 42 U.S.C. § 1983 recognizes a private right of action against a person who deprives another of his civil rights under color of law. (Pl.'s Resp. in Opp'n to Rule 12(b)(1) Mot. to Dismiss 3-4.) Defendants Field and Curry point out that they are private citizens, not government officials (Mem. in Supp. of Rule 12(b)(1) Mot. to Dismiss 5), but that fact alone is not dispositive of the question whether they were acting "under color of" state law for purposes of a constitutional claim. A person who

13

is a "willful participant in joint action with the State or its agents" may be liable for a constitutional violation, *Dennis v. Sparks*, 449 U.S. 24, 27 (1980). But "merely resorting to the courts and being on the winning side of a lawsuit does not make a party a co-conspirator or a joint actor with the judge." *Id.* at 28.

Resorting to the courts and being on the winning side of a lawsuit is all that Defendants Fields and Curry are alleged to have done here. Mr. Curry's only allegation of a purported conspiracy is that the private parties "strategically draft[ed]" several of the orders that Judge Lopez later entered (Compl. ¶ 52; Pl.'s Resp. in Opp'n to 12(b)(1) Mot. to Dismiss 10), served these orders "on Plaintiff's payor of pension benefits" (Pl.'s Resp. in Opp'n to 12(b)(1) Mot. to Dismiss 13), and filed a "motion to force Plaintiff to maintain a job diary" that Judge Ahern later granted. (Compl. ¶ 166.) This conduct, Plaintiff alleges, rendered Defendant Fields and Curry state actors. The authority he cites, however,—*Rankin v. Howard*, 633 F.2d 844 (9th Cir. 1980), *overruled on other grounds*, *Ashelman v. Pope*, 793 F.3d 1072 (9th Cir. 1986)—is not controlling and, in any event, is distinguishable. In *Rankin*, the plaintiff alleged that the defendants "induced the [state] judge to abandon his impartiality and fraudulently alleged Rankin's residence in Kansas to create a semblance of jurisdiction." 633 F.3d at 850. Mr. Curry, by contrast, alleges conduct that his own brief acknowledges is common practice in the Circuit Court of Cook County. Whatever the merits of "[t]he custom, of the Circuit Court of Cook County, Illinois, to allow an adverse party to have control of the final wording of a court order" (Pl.'s Resp. in Opp'n to Rule 12(b)(1) Mot. to Dismiss 11), it does not provide a basis for a claim that private litigants are acting under color of law. "[M]erely resorting to the courts and being on the winning side of a lawsuit does not make a party a co-conspirator or a joint actor with the judge." *Dennis*, 449 U.S. at 28. That is what Mr. Curry's allegations against Fields and Curry amount to here, and it is not enough to give this court jurisdiction over his civil rights claims against them.

14

### V. Request for Miscellaneous Relief

Mr. Curry has filed a motion for "miscellaneous" relief, including removal of his case to this court and an order staying his payment obligations. The court's conclusions, above, dictate that much of the relief Mr. Curry seeks in this motion be denied. Mr. Curry also asks, however, that this court order Defendants Fields and Curry to reimburse him for reasonable expenses he incurred in effecting service of process, in accordance with Rule 4(d)(2) of the Federal Rules of Civil Procedure. In an affidavit attached to his motion, Mr. Curry states that he mailed the required documents to Defendants Fields and Curry on May 18, 2017 via United States Postal Service (USPS) Priority Mail. (Aff. in Supp. of Mot. for Miscellaneous Relief 2.) He also states that "USPS tracking of the mailings" confirmed delivery to Curry and Fields on May 19, 2017, at 10:56 a.m. and 11:19 a.m., respectively. (*Id.* at 3.) When asked at a June 22, 2017 state court hearing whether they had returned the waiver of service included in the mailings, both Defendants responded "no." (*Id.* at 4.)

Neither Ms. Curry nor Ms. Fields objects to Mr. Curry's request for reimbursement in their responses to Mr. Curry's motion. The fact that Defendants may justifiably deem this litigation frivolous does not create an exception to the dictates of Rule 4(d)(2), and Mr. Curry, who alleges to be unable to pay court-ordered support, can ill afford the costs of service of process. Pursuant to Rule 4(d)(2) of the Federal Rules of Civil Procedure, this court orders Defendants to pay the reasonable expenses Mr. Curry incurred in effecting service.

## **CONCLUSION**

Plaintiff's Motion for Miscellaneous Relief [6] is denied as to all matters except his request for reimbursement of reasonable expenses for service of process. Both Motions to Dismiss [17, 22] are granted.

ENTER:

*[signature: Rebecca R. Pallmeyer]*

Dated: December 4, 2017

REBECCA R. PALLMEYER
United States District Judge